# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| GUILLMO (GUILLERMO) PEREZ | : | CIVIL ACTION |
| --- | --- | --- |
| *Petitioner-pro se* | : | |
| | : | NO. 15-4177 |
| v. | : | |
| | : | |
| **LAUREL HARRY,** *et al.* | : | |
| *Respondents* | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                                    MAY 5, 2017

# MEMORANDUM OPINION

**INTRODUCTION**

      Petitioner Guillmo (Guillermo) Perez ("Petitioner" or "Perez"), a Pennsylvania state prisoner proceeding *pro se,* filed a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254, in which he asserted numerous claims of ineffectiveness of counsel and denial of due process, [ECF 1], supplemented by a traverse. [ECF 18]. In accordance with Title 28 U.S.C §636(b) and Local Civil Rule 72.1.IV(c), the petition was referred to United States Magistrate Judge Richard A. Lloret for a *Report and Recommendation* ("R&R"). [ECF 3]. On November 30, 2016, the Magistrate Judge issued an R&R, which recommended that the petition for a writ of *habeas corpus* be denied. [ECF 19]. After requesting and being granted an extension of time in which to do so, Petitioner filed objections to the R&R "addressing and preserving claims One (1) and Two (2) that were argued in Petitioner's Traverse to show cause." [ECF 23]. This matter is, therefore, ripe for a *de novo* review and determination of the specific objections to the R&R.

After a thorough and independent review of the state court record and court filings, for the reasons stated herein, Petitioner's objections are overruled, the R&R is approved and adopted, and the petition for a writ of *habeas corpus* is denied.

**BACKGROUND**

On April 17, 2003, Petitioner was found guilty by a jury of third degree murder, carrying a firearm without a license, and carrying a firearm on a public street in Philadelphia, Pennsylvania, and on June 17, 2003, was sentenced. *Commonwealth v. Perez*, 103 A.3d 344, 346 (Pa. Super. Ct. 2014). The facts underlying Petitioner's conviction were summarized by the Pennsylvania Superior Court and quoted in the R&R as follows:

> Mr. Levaughn Nesbitt testified he had been in an abandoned station wagon in a lot on Firth and Ninth Streets in Philadelphia with [Perez] and the victim on June 1, 2001, just before 11:00 p.m. N.T., 4/15/03, at 103–04. The victim sat at the driver's seat, [Perez] sat in the front passenger seat and Mr. Nesbitt sat in the back seat on the driver's side. *Id.* at 105. Mr. Nesbitt was smoking marijuana in the vehicle and shared some with the others, who had been smoking a "wet" [a marijuana cigar soaked in embalming fluid] when he got in the car. *Id.* at 106–107. Mr. Nesbitt witnessed [Perez] pull a black gun "out of nowhere," hold it in his hand and state he was "going to use it," after which the victim asked him to put the gun away, and [Perez] complied. *Id.* at 107–108, 121. Mr. Nesbitt asked the victim to accompany him to the latter's grandmother's home to watch the remaining portion of a 76ers basketball game. The victim stated he would go there after he finished his "wet." *Id.* at 108.
>
> Ms. Shakira Morse, the victim's sister, testified she was visiting her grandmother's home on June 1, 2001, when [Perez] came to the door and asked to speak to the victim. *Id.* at 125–126. [Perez] asked the victim for something, and the victim told [Perez] to get it from "Roskoe." *Id.* at 126. [Perez] left and returned in about five minutes. *Id.* at 126. The men spoke again after which [Perez] left the home, and the victim followed about five minutes later. *Id.* at 126–127. After approximately ten minutes had passed, Mr. Nesbitt came to watch the basketball game, and about fifteen minutes later, Ms. Morse heard gunshots. *Id.* at 127.

Mr. Ismael Roman, the block captain, testified he lived at 821 East Firth Street, and on the evening of June 1, 2001, he was home with his family when he heard one gunshot followed shortly thereafter by two more. *Id*. at 68–69. When Mr. Roman looked out his window, he saw [Perez] trying to pull the gun's slide forward to fire it while crossing back and forth in the middle of the street in front of Mr. Roman's car. *Id*. at 72. He observed [Perez'] second shot hit the pavement and the third hit Mr. Roman's automobile. [Perez] then walked toward a vacant, littered lot located behind the houses in the 2500 Block of North Ninth Street. *Id*. at 68–76.

Ms. Regina Hunter testified on the date of the incident she lived in a home at 2509 North Ninth Street. While she was watching the 76ers basketball game, [Perez] broke through the locked back door of her home and tore apart her kitchen. He was holding something, but Ms. Hunter could not positively identify the object. *Id*. at 89–92. He was speaking like he was "crazy," though he complied with Ms. Hunter's order to leave through the front door. *Id*. at 92, 98.

Detective Timothy Bass testified that on the evening of June 1, 2001 he was sent to the 800 Block of West Firth Street, where he recovered two, fired cartridge casings and a hand gun among refuse in a vacant lot. *Id*. at 37–39. He also recovered another cartridge casing from an abandoned, brown Chevrolet station wagon. *Id*. at 35. The passenger front window had been shattered and both the driver's door and front passenger doors were ajar. *Id*. at 46–48.

Officer Demetrius Heggs testified he was in uniform and responded to a call at Ninth and Firth Streets on June 1, 2001. *Id*. at 131–132. Officer Heggs proceeded southbound on Ninth Street and came to the corner of Ninth and West Cumberland Streets where Mr. Roman provided him with a brief description of a male he saw firing a gun. *Id*. at 132–133. He observed a commotion at [Perez'] grandmother's home; she explained he had burst in and gone upstairs. *Id*. at 133–134. Officer Heggs noticed [Perez] walking down the stairs with a "large wound on his head." *Id*. at 135–136. [Perez] was speaking unintelligibly and appeared to be under the influence of drugs. *Id*. at 136–137, 142. [Perez] walked out of the front door and traveled on foot eastbound on Cumberland Street from Ninth Street toward Eighth Street. *Id*. at 137. Officer Heggs called for backup as he followed [Perez] in his patrol car. *Id*. Officer Heggs found himself at the scene of the homicide where he discovered a black male slumped over the steering wheel leaning towards the passenger side. *Id*. at 139. He

> also noticed a vehicle parked across the street from the station wagon with the windows shot out. *Id*. at 142.
>
> Officer Edwin Correa testified he backed up [O]fficer Heggs and first saw [Perez] on the 2500 Block of Eighth Street after Mr. Roman directed his attention to [Perez]. *Id*. at 150. Officer Correa identified himself as a police officer at which time it appeared to him that [Perez] was going to flee. Officer Correa and his partner quickly walked over to [Perez], frisked him for weapons and placed him in their vehicle. *Id*. at 151–52. [Perez] repeatedly exclaimed "Oh, God, please forgive me for what I did." *Id*. at 152.
>
> Dr. Ian Hood testified the victim was pronounced dead at 11:50 p.m. N.T., 4/16/03, at 50. Dr. Hood performed an autopsy the next day at which time he observed two gunshot wounds on the victim's body-one entrance wound in his chest and one exit wound in his back. These wounds caused the victim's death. *Id*. at 49–60.

*Perez*, 103 A.3d at 345-47.

The procedural history of this matter is set forth in the R&R, and need not be repeated in detail, and will be summarized to the extent relevant to the analysis of Petitioner's objections. As noted in the R&R, Petitioner initially did not file a direct appeal; his direct appeal rights were restored *nunc pro tunc* following his filing of a PCRA petition. *Id*. at 347. After an unsuccessful direct appeal, Petitioner filed a *pro se* PCRA petition asserting numerous claims, including, the purported claims that are the subject of his objections. Following the appointment of Attorney James S. Bruno as Petitioner's PCRA counsel, a counseled amended petition was filed which asserted six claims; but only one of the two claims on which Petitioner focuses his objections; *to wit*: ineffective assistance of trial counsel for failing to request a cautionary jury instruction. Attorney Bruno withdrew his representation, and Attorney Janis Smarro was substituted as counsel for Petitioner during his PCRA proceeding. After Respondents filed a motion to dismiss, Attorney Smarro filed a second amended PCRA petition which included only two of the six claims Attorney Bruno had alleged in the first amended PCRA petition. Neither of those two

4

claims were the claims that are the focus of Petitioner's objections. On November 8, 2013, the second amended PCRA petition was dismissed without a hearing. *Id.* at 347.

Petitioner, still represented by Attorney Smarro, appealed the denial of his PCRA petition to the Superior Court. *Id.* at 345. In that appeal, Petitioner again asserted only the two claims included by Attorney Smarro in the second amended PCRA petition, which are not the two claims that are the subject of Petitioner's objections. *Id*. at 347. The Superior Court held that although the two ineffective assistance of trial counsel claims argued in the second amended PCRA petition had arguable merit, Petitioner could not demonstrate actual prejudice, and denied his appeal. *Id*. The Pennsylvania Supreme Court denied further review. *Commonwealth v. Perez*, 116 A.3d 604 (Pa. 2015) (Table). Petitioner's underlying timely *habeas* petition followed.

**LEGAL STANDARD**

Where objections to an R&R are filed, the court must conduct a *de novo* review of the contested portions of the R&R, *see Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. §636(b)(1)(C)), provided the objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In conducting its *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. 28 U.S.C. §636(b)(1). Although the review is *de novo*, the statute permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *United States v. Raddatz*, 447 U.S. 667, 675-76 (1980); *Goney*, 749 F.2d at 7. Objections which merely rehash an argument presented to and considered by a magistrate judge are not entitled to *de novo* review. *Becker v. Tennis*, 2011 WL 2550544, at *1 n.3 (E.D. Pa. June 23, 2011) (declining to address contentions included in petitioner's objections, concluding that they are "nothing more

than a restatement of the underlying claims contained in his petition") (citing *Morgan v. Astrue*, 2009 WL 3541001, at *3 (E.D. Pa. Oct. 30, 2009)).

The Antiterrorism and Effective Death Penalty Act ("AEDPA") amended the standards for reviewing state court judgments raised in federal *habeas corpus* petitions filed under 28 U.S.C. §2254. *Werts v. Vaughn*, 228 F.3d 178, 195 (3d Cir. 2000). AEDPA increased the deference federal courts must give to the factual findings and legal determinations of the state courts. *Id*. at 196. Thus, in accordance with §2254(d), a *habeas corpus* petition may only be granted if the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).

In order to seek federal *habeas* relief, however, a petitioner must first exhaust the remedies available in state court. *See* 28 U.S.C. §2254(b)(1) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the applicant has exhausted the remedies available in the courts of the State . . ."). To meet this exhaustion requirement, a petitioner must "fairly present his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). In order for a claim to be exhausted, "'[b]oth the legal theory and facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.'" *Tome v. Stickman*, 167 F. App'x 320, 322-23 (3d Cir. 2006) (quoting *Evans v. Court of Common Pleas, De. County, Pa.*, 959 F.2d 1227, 1231 (3d Cir.

1992)). A state prisoner must "fairly present" his federal claims to the state courts before seeking federal *habeas* relief by invoking "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Pennsylvania, one complete round includes presenting the federal claim through the Superior Court on direct or collateral review. *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004). The *habeas* petitioner bears the burden of proving exhaustion of all state remedies. *Boyd v. Waymart*, 579 F.3d 330, 367 (3d Cir. 2009).

If a state court has refused or would refuse to review a claim based on a state procedural rule that is independent of the federal question and adequate to support the judgment, the court may deny that claim as procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 729, 731-32 (1991); *Lark v. Sec't Pa. Dept. of Corrections*, 645 F.3d 596, 611 (3d Cir. 2011); *Johnson v. Pinchak*, 392 F.3d 551, 556 (3d Cir. 2004). A federal court may consider the merits of a procedurally defaulted claim only if "the petitioner establishes 'cause and prejudice' or a 'fundamental miscarriage of justice' to excuse the default." *Holloway v. Horn*, 355 F.3d 707, 715 n.3 (3d Cir. 2004) (quoting *Coleman*, 501 U.S. at 750).

To show "cause," the petitioner "must demonstrate some objective factor external to the defense that prevented compliance with the state's procedural requirements." *Id.*; *see also Murray v. Carrier*, 477 U.S. 478, 488 (1986). Examples of suitable "cause" include a showing that: (1) the factual or legal basis for a claim was not reasonably available; (2) some interference by state officials made compliance with the state procedural rule impracticable; or (3) the procedural default was the result of ineffective assistance of counsel. *Id*. at 488. To demonstrate "prejudice," a petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire

trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

**DISCUSSION**

Petitioner's objections to the Magistrate Judge's R&R are directed solely to claims one and two of his eight *habeas* claims. In the well-reasoned report, the Magistrate Judge found that these claims were procedurally defaulted and, further, that Petitioner had failed to meet the requirements to overcome the default. Petitioner's objections to these findings largely reiterate the same arguments he presented to, and which were thoroughly considered and rejected by, the Magistrate Judge. Because these objections merely rehash the disposed arguments made in the *habeas* petition, these objections are not entitled to a *de novo* review. Solely for this reason, Petitioner's objections can be overruled. Notwithstanding, in the interest of judicial economy, the objections are addressed below.

At claim one of the *habeas* petition, Petitioner asserts that trial counsel was ineffective for failing to request that the court issue a cautionary instruction with regard to the testimony of eyewitness Ismael Roman. At claim two, Petitioner asserts that trial counsel was ineffective for failing to impeach Police Officer Correa. As noted, the Magistrate Judge found that these claims were procedurally defaulted, as they had never been fairly presented to each requisite level of the state courts, and Petitioner had failed to meet his burden of demonstrating cause and prejudice sufficient to overcome the default. In his *habeas* petition and objections, Petitioner appears to concede that these claims were not exhausted, and relies on *Martinez v. Ryan*, 566 U.S. 1 (2012), to overcome the procedural default of these claims. Petitioner objects to the Magistrate Judge's findings that he has not met the requisite burden to overcome the procedural default of these claims.

In the argument to overcome this procedural default, Petitioner contends that his PCRA counsel, Attorney Smarro, was ineffective for not asserting these claims or including them in the second amended PCRA petition she filed on his behalf. The Magistrate Judge rejected this same argument, finding that Petitioner's PCRA counsel did not render ineffective assistance because she had reasonable strategic reasons for narrowing the claims asserted in the PCRA petition and, further, that Petitioner had not shown that he was prejudiced by the decision. This Court agrees.

In his objections, Petitioner offers no substantive argument that was not already presented to the Magistrate Judge, but merely suggests that these procedurally defaulted claims are somehow subject to the "narrow exception" set forth in *Martinez*. In that case, the United States Supreme Court carved out a "narrow exception" to the well-established rule that alleged errors by post-conviction counsel cannot be the basis for showing "cause" for a procedural default of an underlying ineffective assistance of trial counsel claim because there is no federal constitutional right to counsel on post-conviction review. *Id*. at 9, 15-16. The *Martinez* Court held that where state law requires that claims of ineffective assistance of trial counsel be raised for the first time in a collateral proceeding, a federal *habeas* petitioner may be able to establish "cause" sufficient to overcome a procedural default of a "substantial" claim of a trial counsel's ineffectiveness if the collateral counsel was ineffective. *Id*. Thus, a petitioner "may establish cause for the procedural default of an ineffective assistance of counsel claim by demonstrating that his or her counsel in an 'initial-review collateral proceeding' provided ineffective assistance of counsel." *Jones v. Pa. Bd. of Prob. & Parole*, 492 F. App'x. 242, 244 (3d Cir. 2012) (citing *Martinez*, 566 U.S. at 8-9). One such "initial-review collateral proceeding" is at the PCRA petition stage where appointed counsel provides constitutionally ineffective assistance in failing to assert an

ineffective assistance of trial counsel claim that should have been raised. *See Martinez,* 566 U.S. at 14 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

With this narrow exception in mind, when evaluating the effectiveness of PCRA counsel on *habeas* review, this Court must apply the familiar two-prong inquiry articulated in *Strickland*, 466 U.S. 668. To sustain a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that this deficient performance prejudiced the defense. *Id.* at 687. Prejudice has been defined as a "showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*; *see also Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) ("[A] petitioner must demonstrate a reasonable probability that, but for the unprofessional errors, the result would have been different."). As set forth by the Supreme Court in *Strickland*, "judicial scrutiny of a counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. To succeed, "a defendant must overcome the 'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689).

Here, this Court is of the opinion that the Magistrate Judge properly applied the two-prong *Strickland* analysis with respect to the performance of Petitioner's PCRA counsel and correctly found that Petitioner had failed to establish either prong. As noted, Petitioner had filed a *pro se* PCRA petition which asserted numerous claims, including the two claims that are the subject of Petitioner's objections. Attorney Bruno was later appointed to represent Petitioner and in that capacity, he filed an amended petition that asserted six claims which included only one of

the two claims on which Petitioner focuses his objections, *i.e.*, ineffective assistance of trial counsel for failing to request a cautionary jury instruction. Subsequently, Attorney Smarro was substituted as counsel for Petitioner during his PCRA proceeding. After Respondents filed a motion to dismiss, Attorney Smarro filed a second amended PCRA petition in which she included only two of the six claims asserted in Attorney Bruno's first amended PCRA petition. The asserted claims did not include either of the two claims that are the focus of Petitioner's objections. As such, and as conceded by Petitioner, these two claims were not exhausted, and are now procedurally defaulted.

To determine whether PCRA counsel, Attorney Smarro, was constitutionally ineffective for withdrawing the two claims regarding trial counsel's ineffective assistance, thus, providing cause for the default, Petitioner must show that (1) PCRA counsel's representation fell below an objective standard of "reasonableness under prevailing professional norms;" and (2) Petitioner suffered prejudice as a result. *See Strickland*, 466 U.S. at 688, 694. In undertaking this assessment, this Court is "required to . . . assume" that PCRA counsel "made an informed judgment call that was counsel's to make" "unless the petitioner has come forward with evidence to the contrary sufficiently probative to overcome the 'strong presumption' required by *Strickland*." *Sistrunk v. Vaughn*, 96 F.3d 666, 671 (3d Cir. 1996). One of the duties of appellate counsel is to select which claims are most likely to obtain relief for their clients based upon the state of the law at that time, even if this means not presenting claims that might be meritorious if a higher court reconsiders a prior holding or repudiates an established state rule. *See Smith v. Murray*, 477 U.S. 527, 535-36 (1986). The "process of 'winnowing out weaker arguments on appeal and focusing on' those most likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id.* at 536 (quoting *Jones v. Barnes*, 463 U.S. 745,

751-52 (1983)); *see also Buehl v. Vaughn*, 166 F.3d 163, 174 (3d Cir. 1999) (stating that "[o]ne element of effective appellate strategy is the exercise of reasonable selectivity in deciding which arguments to raise."); *Sistrunk*, 96 F.3d at 670 (holding that counsel has "no duty to raise every possible claim" on appeal, that "[a]n exercise of professional judgment is required," and that "[a]ppealing losing issues runs the risk of burying good arguments . . . in a verbal mound made up of strong and weak contentions.") (citations and quotations omitted); *Tok v. Glunt*, 2016 WL 721280, at *5 (E.D. Pa. 2016) ("PCRA counsel, acting as an appellate attorney, was entitled to select those issues on collateral review that he thought most likely to succeed on behalf of his client."). Absent evidence to the contrary, this Court must presume that PCRA counsel withdrew the two claims that are now the focus of Petitioner's objections "for tactical reasons rather than through sheer neglect." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003); *Sistrunk*, 96 F.3d at 671 (holding that reviewing court must presume appellate counsel's selection of issues was "informed judgment call").

Here, in rehashing the same arguments presented to the Magistrate Judge, Petitioner has failed to provide any evidence to overcome this presumption. Indeed, Petitioner makes no attempt in either the *habeas* petition or the objections to the R&R to explain why it was "objectively unreasonable" for Attorney Smarro to winnow out the two ineffective assistance of counsel claims that are the subject of his objections from his uncounseled PCRA petition when filing the second amended PCRA petition on his behalf. As noted, Attorney Smarro was substituted as Petitioner's PCRA counsel, after Petitioner had filed a *pro se* PCRA petition, which subsequently was amended by Attorney Bruno, Petitioner's first PCRA counsel.[1] After the Government filed a motion to dismiss the claims asserted in Petitioner's counseled first

---

[1] Notably, Petitioner's first PCRA counsel, Attorney Bruno, asserted only one of the two ineffective assistance of counsel claims that are the focus of Petitioner's objections here.

amended PCRA petition, Attorney Smarro filed a detailed and well-reasoned second amended PCRA petition which included two other claims of ineffective assistance of trial counsel. Although the Superior Court deemed the that two claims asserted by Attorney Smarro in the second amended PCRA petition had "arguable merit," it found Petitioner could not meet *Strickland*'s prejudice prong. As found by the Magistrate Judge, Attorney Smarro cannot be held ineffective under *Strickland* for winnowing out additional claims in favor of focusing the state court's attention on the two claims she reasonably deemed, and the court agreed, had arguable merit, even when rejected by the Superior Court because the evidence of Petitioner's guilt precluded a finding of prejudice. As such, Petitioner has not shown that his PCRA counsel was deficient in the provision of legal services and, therefore, cannot overcome the procedural default of these two claims.

In addition, in light of the overwhelming trial evidence of his guilt, Petitioner has not, nor can he, meet the prejudice prong of *Strickland* or as required to overcome his procedural default. To demonstrate prejudice under the *Strickland* analysis, Petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. To establish prejudice sufficient to overcome his procedural default, Petitioner must show that the errors he complains of "worked to his actual and substantial disadvantage, infecting his entire trial [or appeal] with error of constitutional dimensions." *Frady*, 456 U.S. at 170. In assessing prejudice, this Court must consider the strength of the evidence presented against the Petitioner at trial. *See United States v. Calhoun*, 600 F. App'x 842, 844 (3d Cir. 2015).

In finding that Petitioner had not met the prejudice prong of *Strickland* when analyzing Petitioner's other ineffective assistance of trial counsel claims, the Superior Court described the overwhelming evidence as follows:

> On the evening of the murder, Shakira Morse, the victim's sister, testified that Appellant twice went to the victim's house, and the victim left the residence shortly after Appellant's second visit. Appellant, the victim, and Levaughn Nesbitt sat in an abandoned car and smoked marijuana. Nesbitt testified that Appellant pulled out a black gun and stated that "he was going to use it." N.T., 4/15/03, at 108. An eyewitness, Ismael Roman, heard a gunshot, then observed Appellant fire two shots. *Id.* at 69–73. The police recovered a shell casing in the front passenger seat of the abandoned car where Appellant had been sitting and where the body of the victim was discovered. Two other casings and a gun were found in the vacant lot near the abandoned automobile. *Id.* at 35–37. Another police officer heard a commotion at Appellant's grandmother's house and observed Appellant walking down the stairs with a "large wound on his head." *Id.* at 135–136. When Appellant was eventually stopped by the police, he repeatedly exclaimed, "Oh God, please forgive me for what I did." *Id.* at 152.

*Perez*, 103 A.3d at 352. In light of this same compelling evidence of Petitioner's guilt, this Court concludes, as did the Magistrate Judge, that even if Petitioner's second appointed PCRA counsel, Attorney Smarro, had asserted the two withdrawn ineffective assistance of trial counsel claims that are the subject of Petitioner's objections, there was no realistic likelihood that the outcome of the PCRA proceedings would have been different. Likewise, there is no realistic likelihood that had Petitioner's trial counsel either requested a cautionary instruction or impeached Officer Correa, the outcome of the trial would have been different. Nor can it be said that these purported errors "worked to his actual and substantial disadvantage, infecting his trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170. Under the totality of the circumstances described and evidence of record, Petitioner has not met the prejudice element necessary under *Strickland* or required to overcome his procedural default.

**CONCLUSION**

For the reasons stated herein, Petitioner's objections to the Report and Recommendation lack merit and are overruled. Consequently, the Report and Recommendation submitted is approved and adopted, and Petitioner's *pro se* petition for a writ of *habeas corpus* is denied. In addition, because reasonable jurists would not debate this Court's disposition of Petitioner's claims, a certificate of appealability is denied. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). An Order consistent with this Memorandum Opinion follows.


NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.